IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

PAULINE VALDEZ,

        Plaintiff,

v.                                        CIV 03-1006 KBM

JO ANNE B. BARNHART,
Commissioner of Social Security,

        Defendant.

## MEMORANDUM OPINION AND ORDER

In her mid-forties, Plaintiff Pauline Valdez worked for a few years as a dishwasher in restaurants, and for a short time in an unpaid position as a filing clerk. She gave contradictory reasons for quitting work. She allegedly left her job at one restaurant because she was worried she would collapse and could not handle the work due to depression. However, the record shows that the following month she began working at a different restaurant. She testified that she stopped working there because it had closed down. *See e.g., Administrative Record* ("*Record*") at 50, 81, 92, 104-109, 136. The last date Valdez worked was July 2000, and she applied for benefits in March 2001. She asserted that as of October 1, 2000, her chest pain, shortness of breath, depression, sinus problems, stomach problems, swelling, back problems, weakness, fatigue, and pain precluded her from working. *See e.g., id.* at 81, 91.

Administrative Law Judge ("ALJ") Paul J. Keohane found that Plaintiff has the residual functional capacity to perform a "significant range of light work" and, with the aid of the testimony from a vocational expert, identified three such jobs she can perform – food assembler,

laundry folder, and cashier. He therefore denied benefits at Step 5. *Id.* at 17. The Appeals Council declined review on June 30, 2003, thereby rendering the ALJ's decision final. *Id.* at 4-6.

This matter is before the court on Plaintiff's motion to reverse or remand. Valdez contends that the ALJ erred in his credibility determination and consequently also erred in his residual functional capacity finding and in his hypothetical to the vocational expert. *Doc. 9.* Pursuant to 28 U.S.C. § 636(c) and FED. R. CIV. P. 73(b), the parties have consented to have me serve as the presiding judge and enter final judgment. *See Docs. 4, 12.*

The entire record has been read and the arguments of the parties carefully considered. I find that Plaintiff's motion should be denied and the decision of the Commissioner affirmed.

## I.  Standard Of Review

If substantial evidence supports the ALJ's findings and the correct legal standards were applied, the Commissioner's decision stands and Plaintiff is not entitled to relief. *E.g., Hamilton v. Sec'y of Health & Human Servs.,* 961 F.2d 1495, 1497-1500 (10th Cir. 1992). My assessment is based on a review of the entire record, where I can neither reweigh the evidence nor substitute my judgment for that of the agency. *E.g., Casias v. Sec'y of Health & Human Servs.,* 933 F.2d 799, 800 (10th Cir. 1991). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Castellano v. Sec'y of Health & Human Servs.,* 26 F.3d 1027, 1028 (10th Cir. 1994) (internal quotations and citations omitted). "Evidence is insubstantial if it is overwhelmingly contradicted by other evidence." *O'Dell v. Shalala,* 44 F.3d 855, 858 (10th Cir. 1994) (citation omitted).

## II.  ALJ Opinion

ALJ Keohane's opinion first reviews the medical evidence concerning Plaintiff's

conditions to determine if a "severe impairment exists." *See Record* at 12-13.  He noted that the "medical evidence indicates that the claimant has degenerative disc disease, history of alcoholism in remission, chronic pulmonary insufficiency history of peptic ulcer disease and affective disorder" and found them to be "severe" conditions.  He further found, however, that they do not meet any listing because the "longitudinal medical evidence reflects the claimant's conditions are treated symptomatically with good results." *Id.* at 13.

In a detailed discussion, ALJ Keohane gave specific reasons for this conclusion: Valdez' complaints of shortness of breath are possibly related to anxiety because electrocardiogram and pulmonary tests and x-rays have not revealed any abnormalities; her history of chronic complaints of gastrointestinal problems included a possible pancreatic mass, but tests were negative and she has not had any significant weight loss; her complaints of chronic pain have not resulted in a limited range of motion, trouble sitting or getting up, and x-rays of the spine are normal; her chronic sinus problems are managed symptomatically; her long history of depression is treated with Zoloft which, as of approximately six months before the hearing, was described as "almost fully resolved," with Plaintiff at that time declining any sleep medication. *See id.* at 12-13 & 414.

ALJ Keohane then turned to Plaintiff's residual functional capacity where he is required to "consider all symptoms, including pain." *Id.* at 14.  In that regard, he credited Plaintiff, but "not totally." *See id.* at 14, 16.  His entire analysis provided:

> The claimant's allegations are credible to the extent of precluding
> more than unskilled light work activities.  The claimant can perform
> no more than simple, one-to-two step job instructions.
>
> The claimant lives alone in an apartment, is right-handed and
> currently weighs 154 pounds.  She has had no job attempt since she
> last worked as a kitchen helper.  She states that she is unable to

perform her past work as kitchen helper due to pain in her joints, including her hands, feet and lower back. ***She cares for her daily needs, performs all household activities, reads and watches movies for enjoyment.*** She states she is depressed, nervous and experiences chest pains. She attends counseling once a week. The claimant appears to have a lack of motivation to work. She finished the 10th grade in school and then went on welfare (Exhibit 9F). ***While the claimant alleges profound stomach and bowel problems, she presently weight 154 pounds, not a large weight loss from her weight of 168 pounds in July 2001 (Exhibit 3F). She is able to eat and maintain her weight.*** The claimant's alcohol problem is in remission. She gave up alcohol in the 1980's and there is nothing to support the contrary. The claimant is on General Assistance for the same problems she asserts in this claim. There is no strong objective medical evidence to support her position of disability. While the list of symptoms is extensive, the ***claimant is taking only Zoloft 50 mg.*** once a day and takes an occasional over-the-counter Aleve. ***The claimant is not on any other medication although her list of symptoms is extensive.*** The claimant's allegations of inability to perform any work activity are inconsistent with the objective medical evidence.

The consultative physician, Velma L. Campbell, M.D., indicates in July 2001 that there are no musculoskeletal barriers to activity to the sedentary to light work activities if the claimant's gastrointestinal condition is [not] as severe as reported (Exhibit 3F).[1] ***The evidence reflects the gastrointestinal problem is potentially controllable. The statement that the claimant has multiple medical and psychological problems that prevent her from working and that she needs medical assistance to cover the cost of medications is not supported by the objective medical evidence (Exhibit 5F/31).*** The undersigned agrees with the State

---

[1] The exact wording of the consultant's finding was:

> There are no musculoskeletal barriers to activity to the sedentary to light activity, but if the gastrointestinal condition is as severe as reported it would interfere with endurance, concentrations, and ability to maintain activity without frequent breaks or absenteeism. The myalgia and gastrointestinal problems are potentially controllable, but as yet the patient has not established medical care.

*Record* at 242-43.

4

> agency physicians that the claimant retains the functional capacity for a significant range of unskilled light work activity (Exhibit 11 F).
>
> Accordingly, the undersigned finds that claimant retains the following functional capacity: perform activities involving occasionally lifting and carrying up to 20 pounds and frequently 10 pounds and walking and standing up to six hours in an eight-hour day. The claimant is limited to unskilled work activity, as she has no vocational skills readily transferable to the work activities of other work.

*Id.* at 14 (emphasis added).

Based on hypotheticals that included physical limitations consistent with light work and "moderate" mental limitations of "understanding and following through on detailed instructions . . . concentration and attention to tasks," the vocational expert testified that such a person could perform the three jobs the ALJ identified in his opinion. *See id.* at 53-54.

### III.  Analysis

#### *A.  Credibility*

The ALJ's residual functional capacity finding and resulting hypotheticals to the vocational expert are contingent on his credibility finding, so I start with Plaintiff's issues concerning credibility. Valdez first argues that the ALJ's credibility finding is flawed because he only considered the "objective medical evidence factor" and "disregarded other relevant credibility factors such as Plaintiff's limited daily activities and regular doctor's visits for her depression." *Doc. 10* at 12. I am entirely unpersuaded by this argument. The portion of ALJ Keohane's opinion quoted above directly contradicts the assertion that he disregarded daily activities and depression.

Moreover, although the ALJ did not elaborate about Plaintiff's "daily activities" in his

5

written opinion, at the hearing he questioned Plaintiff in detail about her current abilities. Valdez testified that she: takes care of all of her personal needs; shops twice a month, does laundry, takes out the trash, and washes dishes; still sweeps, mops, and vacuums though not as often or as well as before; reads, works on puzzle books, watches movies, and visits friends. *See id.* at 43-47. The ALJ's discussion of the medical evidence and credibility shows that he specifically considered her daily activities, which are noteworthy.

Also, he specifically considered her alleged mental impairment, a condition that by Plaintiff's own admission to her physicians is controlled by medication and which the ALJ so noted. For example, Plaintiff originally started with Prozac as early as 1999, and, although this also helped, she suffered side effects of weakness and fatigue from the Prozac,[2] which prompted her physician to switch her to Zoloft[3] in 2002. *See Record* at 182, 279-80, 287-89, 297, 300, 303, 319-21, 375, 414. She took Prozac for years, and in Spring 2001, the New Mexico Department of Human Services referred her "for counseling due to receiving financial aid and food stamps." *Id.* at 348. She attended this counseling off and on due to moving, *see id.* at 341-54, and resumed counseling after her mother died in July 2002, *see id.* at 375, 377-78, 393-96. Within three months of her mother's death, she related that she was "feeling much better [with] Zoloft . . . dep[ression] almost fully resolved, sleep still broken, but decline sleeper meds, eats fair." *Id.* at 414.

---

[2] Prozac, the brand name for "fluoxetine," "can cause nausea, headaches, anxiety, insomnia, drowsiness, and loss of appetite." www.medterms.com.

[3] Zoloft, the brand name for "sertraline," can have similar side effects, the "most common . . . are sleepiness, nervousness, insomnia, dizziness, nausea, tremor, skin rash, upset stomach, loss of appetite, headache, diarrhea, abnormal ejaculation, dry mouth and weight loss." www.medterms.com.

Plaintiff next takes issue with the ALJ's determination that Valdez' failure to take medications for certain symptoms does not result from an inability to obtain them because she cannot afford them.  *See id.*  Again, the ALJ specifically noted and rejected this claim because  the objective medical evidence did not bear out the assertion.

For example, in October 2000, the New Mexico Department of Human Services notified the Colfax County Indigent Fund that Plaintiff "is not eligible for medical assistance from this office." *Record* at 299.  Thereafter, Plaintiff's treating physician at the time wrote an opinion letter and "prescription" stating that Plaintiff's medical problems prevent her from working and that she needs financial assistance for her office visits and prescriptions.  *See id.* at 295, 296.  However, she continued to receive medical treatment, prescriptions, and testing thereafter.  *See, e.g, id*. at 156-59, 161, 163, 176-79, 244-49, 267-69, 387-92, 402 (tests); *id.* at 270, 273-77, 279-89, 292-94, 375, 377-78, 398-400, 412-14 (office visits); id. at 393-96 (emergency room visit); *see also id.* at 170-74, 282, 402-07, 409-11 (duplicates of previously-cited records).

Plaintiff further asserts that the ALJ improperly discredited her testimony that she has chronic diarrhea.  The only "medical" evidence she cites in support of her claim that the diarrhea is completely disabling is the consulting physician's comment that "*if* the gastrointestinal condition is as severe as reported it would interfere with endurance, concentrations, and ability to maintain activity without frequent breaks or absenteeism."    *See Doc. 13* at 3, 4.  As emphasized above in his opinion, the ALJ was aware of the consultant's opinion and credited her conclusion that  gastrointestinal complaints are potentially controllable.  The ALJ noted, however, that Plaintiff does not take medication for the condition and observed that Valdez can eat and has maintained her weight despite her assertion of disabling diarrhea.

Thus, this case does not present the situation where an ALJ fails to link a credibility finding to substantial evidence and instead just issues a "conclusion in the guise of findings." *E.g., Malakowsky v. Barnhart,* 66 Fed. Appx. 756, 758 (10th Cir. 2003) (and cases cited therein). Instead, ALJ Keohane

> did not simply recite the general factors he considered, he also stated what specific evidence he relied on in determining that plaintiff's allegations of disabling pain were not credible. Contrary to plaintiff's view, our opinion in *Kepler* does not require a formalistic factor-by-factor recitation of the evidence. So long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility, the dictates of *Kepler* are satisfied.

*Qualls v. Apfel,* 206 F.3d 1368, 1372 (10th Cir. 2000); *see also Diaz v. Secretary of Health & Human Servs.,* 898 F.2d 774, 777 (10th Cir. 1990) ("Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence.").

Substantial evidence in the record supports the ALJ's conclusions. Conversely, Plaintiff does not identify, nor have I found substantial evidence to the contrary. Accordingly, I find this claim of error without merit. *Compare Smith v. Apfel,* 1998 WL 33889 at *2 (10th Cir. 1998) ("The ALJ's ultimate conclusion that plaintiff retained the residual functional capacity to perform sedentary work despite her bowel problems is supported by substantial evidence;" specifically, inconsistencies in testimony when compared to medical evidence and prior work history); *with Bakalarski v. Apfel,* 1997 WL 748653 (10th Cir. 1997) (credibility finding regarding complaint of chronic diarrhea not supported by substantial evidence where record showed medical basis for complaints of chronic abdominal pain, physicians prescribed a variety of medications and procedures for it, and ALJ's asserted nonmedical reason for claimant quitting work not supported

by evidence).

### B.  Remaining Claims Hinge On Credibility Argument

Plaintiff maintains that the ALJ "failed to consider Plaintiff's major depression and complaints of pain" in arriving at his residual functional capacity determination. *Doc. 10* at 9. She therefore characterizes the ALJ's "RFC finding [as] flawed because it is based upon an incomplete and selective view of the record." *Id.*

However, it is evident from the prior quoted portion of the opinion that the ALJ ***did*** consider her complaints of pain.  Also, in his discussion of the medical evidence, the ALJ specifically mentioned those portions of the record that cover her emergency care admission "due to an anxiety attack after the death of her mom (Exhibit 12F/10)," but observed that by "progress note of October 2002, she reported feeling much better with Zoloft and her depression almost fully resolved (Exhibit 13F/3)." *Record* at 13.  Indeed, he included "affective disorder" as among the severe impairments.  *Id.*  And, although his credibility and residual functional capacity section did not specifically reiterate the "major depression" episode, the section ***did*** include Plaintiff's allegations of disabling depression.  *See id.* at 15.

> As the Tenth Circuit has held,
>
> > Under *[Clifton v. Chater,* 79 F.3d 1007 (10th Cir. 1996)] "[t]he record must demonstrate that the ALJ considered all of the evidence," and the ALJ must "'discuss [ ] the evidence supporting his decision, . . . the uncontroverted evidence he chooses not to rely upon, [and] significantly probative evidence he rejects.'" *Id.* at 1009-10. The ALJ, however, need not discuss every piece of evidence. *Id.*
> >
> > Contrary to Mr. Colbert's contentions, the ALJ's discussion of the medical evidence is legally sufficient. . . . [I]t demonstrates a meaningful analysis of the full medical record and Mr. Colbert's

9

testimony.

*Colbert v. Barnhart,* 85 Fed. Appx. 152, 153 (10th Cir. 2004).

I am presented with precisely the same situation here. While the ALJ's opinion arguably could have been written with more detail and discussion, a deficiency in opinion writing is not grounds for remand. *See e.g, Senne v. Apfel,* 198 F.3d 1065, 1067 (8th Cir. 1999) ("We have consistently held that a deficiency in opinion-writing is not a sufficient reason for setting aside an administrative finding where the deficiency had no practical effect on the outcome of the case."); *Mays v. Bowen,* 837 F.2d 1362, 1364 (5th Cir. 1988) (same)). Notably, other than again challenging the ALJ's credibility finding, Plaintiff cites no medical evidence in the record that supports her argument.

Finally, Valdez contends that the ALJ's "first" hypothetical question to the vocational expert "did not set forth all of Plaintiff's limitations [specifically] her need to frequently go to the restroom due to diarrhea and her reaching limitations." *Doc. 10* at 10. This assertion misrepresents the record. While the ALJ did not give these limitations in the ***first*** hypothetical, he in fact did so in his ***third and fourth*** hypotheticals. *See Record* at 54-55. Yet, he was not necessarily required to do so. *E.g., Decker v. Chater,* 86 F.3d 953, 955 (10th Cir. 1996) (hypotheticals need only reflect impairments and limitations that are borne out by the evidentiary record); *Gay v. Sullivan,* 986 F.2d 1336, 1341 (10th Cir. 1993) ("Without question, the ALJ may restrict the questions to those limitations which he has found to be based upon credible evidence.").

Moreover, the ALJ was not bound by that portion of the vocational expert's answer to the later hypotheticals because, as discussed above, he found Plaintiff's testimony about her

10

limitations not fully credible and that determination is supported by substantial evidence. *E.g, Talley v. Sullivan,* 908 F.2d 585, 588 (10th Cir. 1990) (vocational expert's response to a hypothetical is not binding on the ALJ if the question sets forth impairments which the ALJ does not accept as true). I thus find this claim equally unavailing.[4]

Wherefore,

**IT IS HEREBY ORDERED** that Plaintiff's motion *(Doc. 9)* is denied, and the decision of the Commissioner is affirmed. A final order will enter concurrently herewith.

_____
UNITED STATES MAGISTRATE JUDGE
Presiding by consent.

---

[4] Plaintiff comments that the grids compel a finding of disability for claimant's over age fifty who are limited to unskilled sedentary work, but as the Commissioner observes, the ALJ found Plaintiff could do a significant portion of light work. Hence, the grid for sedentary limitations is irrelevant in this case unless Plaintiff's version of her limitations is fully credited. For the reasons above, the ALJ's credibility and residual functional capacity determinations are not erroneous.